THE PEOPLE, *ex rel.* Norman W. Rose, *vs.* THE BOARD OF
SUPERVISORS OF THE COUNTY OF LIVINGSTON.

Bonds issued by or under the authority of the board of supervisors of a
county, to the supervisors of the several towns, in pursuance of a resolu-
tion passed by such board under the 8th chapter of the laws of 1864, for
the purpose of paying bounties to recruits that shall be mustered into the
service of the United States to the credit of the respective towns, are the
county bonds, and binding as such upon the county at large.

Two distinct methods of raising money are provided by the statute; one be-
ing to *borrow* it, and the other, to raise it by *taxation*. If a board of super-
visors resolves to borrow the money required, it is authorized to borrow
upon the credit of the county, and to direct the bonds of the county to be
issued by the county treasurer, to each supervisor, or to borrow money on
such bonds for each supervisor who may apply for the same, to pay a
bounty to each recruit that shall be mustered into the United States service
from the respective towns of the county.

The board is also authorized to allow the towns to borrow upon their own
credit. But unless the board provides by resolution for the issuing of
town bonds, or of bonds upon the sole credit of the towns, or of any town,
bonds so issued by such towns, or any of them, will be unauthorized and
invalid.

The board of supervisors has no right to lend the bonds of the county to the
towns, so as to create town debts.

Town debts can only be lawfully authorized under the act of 1864, in the
shape of town bonds; and such town bonds can only be issued by the town

The People *v.* Supervisors of Livingston County.

authorities after a vote of the town duly had at a regular town meeting, called and held for that purpose.

County bonds, issued under the authority of the board of supervisors, for the payment of bounties, create a county debt, which can only be lawfully assessed upon the whole county. The board can not lawfully make an unequal assessment upon the several towns, to pay such debt.

Such bonds will not become town debts by force of any subsequent vote or resolution of the towns respectively, at special town meetings called for that purpose, but will remain county bonds, and be binding solely upon the body of the county at large.

Bonds having been issued by a board of supervisors, on the credit of the county, the board may properly and lawfully adopt a resolution directing that there be assessed, levied and collected upon the taxable property of the county an amount sufficient to pay the sums due thereon.

ON the 3d day of August, 1864, the defendants passed a resolution authorizing, among other things, the issuing of county bonds to each supervisor of the county who should call for them, to pay a bounty not exceeding $300, to each recruit that should be mustered into the service of the United States to the *credit* of their respective towns, and declaring that "in the payment of said bonds, the board of supervisors assess such sums on the towns respectively in proportion to the amount of bonds taken by each town, through its supervisor." On the 2d of September, 1864, the defendants, by resolution, authorized each town to increase its bounty to a sum not exceeding $1000, "subject to the same regulations as prescribed by the resolution of August 3, 1864." In pursuance of these resolutions, different towns took bonds or money varying greatly in amount, and procured volunteers at different rates. On the 30th day of November, 1864, the same board passed a resolution that the amount necessary to pay these bonds be assessed and collected "as other county taxes are assessed, levied and collected," and proceeded to assess in pursuance thereof, directing, however, that the tax should be spread upon a separate tax roll. The relator feeling aggrieved by the resolution of November 30, and subsequent proceedings, sued out a writ of certiorari, to reverse such resolution and proceedings.

*George F. Danforth* and *Scott Lord,* for the relator.

*T. R. Strong* and *A. J. Abbott,* for the respondent.

*By the Court,* E. DARWIN SMITH, J.   In the case of *John Magee and others* v. *George D. Cutler and others, Supervisors of Livingston county,* decided at the last December term of this court,(*a*) we held that the bonds issued by or under the authority of the board of supervisors of Livingston county under the resolution passed by the board on the third of August, 1864, were county bonds, and binding as such upon the county at large.   The same decision had been made by my brother, James C. Smith, at special term, in an action by James Faulkner and others, against Chauncey Metcalf, county treasurer of Livingston, to restrain the issuing of any such bonds to the supervisor of the town of Ossian in said county.(*b*)

It being claimed that in the decision in both cases, a portion of the resolution of the 3d of September had not been considered by the court by reason of a mistake in setting out a copy of said resolution in the proceedings in the said case of *Faulkner* v. *Metcalf,* the certiorari in this case was allowed, to bring up the said resolution and the proceedings of the board of supervisors relating to the same for reconsideration. Upon a rehearing of the question, we remain of the opinion expressed in the case of *Magee et al.* v. *Cutler et al.* (*supra,*) that the bonds authorized and issued under said resolution were properly county bonds.

That portion of the said resolution omitted in the proceedings in the case of *Faulkner* v. *Metcalf,* treasurer, was the latter part thereof, which states, that in the payment of said bonds, the board of supervisors will assess such sums on the towns respectively in proportion to the amount of bonds taken by each town through its supervisor.   The part of the said resolution omitted does not, we think, change or materially

(*a*) Ante, p. 239.                    (*b*) Ante, p. 255, note.

affect our construction of the said resolution, so far as relates to the question, whether the bonds issued under said resolution are or are not county bonds. The 22d section of the act of 1864, under which the resolution in question was passed, authorizes the boards of supervisors of the counties of this state to raise money for the purpose of paying bounties to volunteers into the naval or military service of the country in two modes. They were authorized to provide for raising money upon the credit of their respective counties for the use of the said county, or upon the credit of any city or town thereof, for the sole use of said city or town; or to raise such money by levying and imposing a tax upon the taxable property of their respective counties for the use of said county, or upon any town or city thereof, for the sole use of such town or city. These two modes of raising money were entirely distinct. One was to *borrow money,* and the other to raise it by *taxation.*

The board of supervisors of Livingston resolved to *borrow* the money which was required. For this purpose they were authorized to borrow upon the credit of the county, or to provide for allowing the towns to borrow upon the credit of the respective towns of the county. They adopted the former course. They authorized the county treasurer of said county to issue the bonds of the county, bearing annual interest, to each supervisor of said county, or to borrow money on said bonds for such supervisors as might call for the same to pay a bounty not exceeding $300 to each recruit that should be be mustered into the United States service from the respective towns of said county. Each supervisor was to be the recruiting and disbursing agent for his town, and draw such amount from the treasury as would pay for the filling the quota of his town. The money thus to be drawn from the treasury of the county was *county money,* borrowed on the sale of county bonds or of bonds issued upon the credit of the county, and if the bonds were taken by the respective supervisors of the several towns instead of money, they were still

county bonds issued in like manner by the county treasurer in pursuance of such resolution, and on the sole credit of the county. No provision is made in said resolution for the issue of town bonds or of bonds upon the sole credit of the towns, or of any town of said county, and no such bonds were issued by the towns respectively so far as we know; certainly the towns had no authority to issue any such bonds, and bonds issued by them, or any of said towns, would be clearly unauthorized and invalid.

The provision in said resolution, that in payment of said bonds, the board of supervisors assess such sums on the towns respectively in proportion to the amount of bonds or money taken by each town through its supervisor, does not change the character of said bonds, or convert them into town obligations. This portion of the resolution is of no legal force. The board of supervisors had no right to lend the bonds of the county to the towns so as to create town debts. Town debts could only be lawfully authorized under the act of 1864 in question, in the shape of town bonds—and such town bonds could only be issued by the town authorities after a vote of the town duly had at a regular town meeting duly called and held for that purpose. This provision in the resolution of the 3d of August, to assess the amount received by the supervisors of said towns, on said bonds, or moneys in payment of said bonds, was an excess of authority on the part of the board of supervisors, was an unauthorized blending in the resolutions of the processes for the payment of money borrowed on the credit of the towns with that for raising money by taxation before its expenditure. These processes or modes of proceedings are entirely distinct. The supervisors could only assess the towns separately to raise the money requisite to pay town bonds duly authorized and issued, or money voted to be raised by taxation by the town meetings for the use of the towns. They could not assess such money to pay borrowed money, unless it was to pay lawful town bonds duly authorized and issued in shape to create

a lawful town debt. That portion of the resolution which states that in payment of the bonds the board will assess the towns respectively, in connection with the issue of county bonds to secure borrowed money, in no proper sense creates any contract. It is simply an abortive suggestion or proposition. The board had no right to carry it into effect in payment of county bonds.

These bonds created a county debt which could only be lawfully assessed upon the whole county. The board could not lawfully make an unequal assessment upon the respective towns to pay such debt. This provision doubtless was inserted in the resolutions with a view to such action of the respective towns through special town meetings called for that purpose, as would authorize the supervisors to assess upon the respective towns the amount of the bonds issued, or money paid to their respective supervisors ; and from the proceedings had before us in other cases we may assume, if we can not judicially know, that such town meetings were in fact held in all or most of the towns of said county, in which appropriate resolutions were duly passed, consenting to the receipt and use of such bonds, or the proceeds thereof, by their respective supervisors, for the purpose of filling the quotas of said towns under the call of the general government for volunteers. Such action of the towns or of the town meetings can not change the operation of these bonds.

The resolutions of such town meetings had no legal force or effect. The bonds issued were none the less county bonds, and binding solely upon the body of the county at large. They did not become town debts by force of any vote or resolution of the towns respectively. The towns could not borrow county bonds, or contract any debts in any way, except by the issuing of town bonds previously authorized by proper resolutions of the board of supervisors for that purpose. No town is liable, as a town separately, to pay any of these bonds, nor can it be assessed for any number of such bonds as issued or lent for its exclusive use or benefit, nor in any way be com-

pelled to pay any amount more than its ratable proportion of the debts contracted by the issue of such bonds. The point that the money raised upon the issuing of these bonds can not be deemed raised for the use of the county, was raised and discussed and decided in the case of *Magee* v. *Cutler*.

The argument that the resolutions of the board of supervisors of the 30th of November, to assess these bonds, so far as they are due, or the interest which has accrued thereon, upon the county at large, does injustice to some of the towns in making them pay a larger amount in the liquidation of the said bonds than they would be compelled to pay, if each town was separately assessed for its proportion of the debt contracted, is one which might have been appropriately addressed to the legislature, or to the board of supervisors acting in its legislative capacity. It is not one which we can consider in reviewing the resolutions of the board of supervisors acting within the limits of their lawful discretion.

The legislature has authorized the board of supervisors of the respective counties to legislate for their respective counties and impose taxes or borrow money to pay bounties for volunteers from the counties. The counties are comprised respectively of many towns, but the board of supervisors of each county legislates for all the towns of the county, as composing together a single civil or political organization or division of the state.

These bonds having been issued on the credit of the county, the resolution passed by the board of supervisors on the 30th November, directing that there be assessed, levied and collected upon the taxable property of the county, the amount which would be sufficient to pay the sums due thereon, was properly and lawfully passed.

It provided for the payment of such bonds, as all other state and county taxes are paid. There may be some inequality in such taxation between the towns, as such, but there is none between the inhabitants of the county at large. The

tax is imposed upon the taxable property of the citizens of county, and property in all communities must bear the burdens of the government. If some towns are richer than others and will therefore pay a large proportion of the tax, so are some citizens richer than others, and it is not unjust, as it seems to us, that the whole property of the county be assessed to pay the bonds in question. At least, the legislature had settled this question otherwise, as we held in the case of *Magee* v. *Cutler*. Judgment, I think, should be given for the respondents in the case, and affirming the proceedings of the board of supervisors of the 30th of November, 1864, with costs.

[MONROE GENERAL TERM, March 6, 1865. *Johnson, J. C. Smith* and *E. Darwin Smith*, Justices.]